FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 JUN 15 PM 4: 32

MIDDLE DIST
ORLANDO, FL

UNITED STATES OF AMERICA

v.                                                Case No. 6:16-cr-115-ORL-37OAB
                                                           18 U.S.C. § 1349
YOSBEL MARIMON,                                            18 U.S.C. § 1347
                                                           18 U.S.C. § 2
    Defendant.                                             18 U.S.C. § 1956(h)
                                                           18 U.S.C. § 982

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were 65 or older or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare program was divided into different "parts." "Part A" of the Medicare program covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. "Part B" of the Medicare program

covered, among other things, medical services provided by physicians, medical clinics, and other qualified health care providers, as well as medications rendered "incident to" such services. The Medicare Advantage Program, formerly known as "Part C" or "Medicare+Choice," is described in further detail below.

4. Payments under the Medicare Program were often made directly to the physician, medical clinic, or other qualified provider of the medical goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5. Physicians, medical clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file bills, known as "claims," with Medicare to obtain reimbursement for services provided to beneficiaries. The claim form was required to contain certain important information, including: (a) the Medicare beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could have been submitted in hard copy or electronically.

6. When a claim was submitted to Medicare, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. The provider further certified that the services being billed were medically necessary and were in fact provided as billed.

7. Pursuant to federal statutes and regulations, Medicare only paid for health care benefits, items or other services that were medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider.

### The Medicare Advantage Program

8. The Medicare Advantage Program, formerly known as "Part C" or "Medicare+Choice," provided Medicare beneficiaries with the option to receive their Medicare benefits through a wide variety of private managed care plans, including health maintenance organizations ("HMOs"), provider sponsored organizations ("PSOs"), preferred provider organizations ("PPOs"), and private fee-for-service plans ("PFFS"), rather than through the original Medicare program (Parts A and B).

9. Private health insurance companies offering Medicare Advantage plans were required to provide Medicare beneficiaries with the same services and supplies offered under Parts A and B of Medicare. To be eligible to enroll in a Medicare Advantage plan, a person had to have been entitled to benefits under Part A and Part B of the Medicare Program.

10. A number of companies, including Blue Cross and Blue Shield of Florida ("BCBS") and Anthem Inc. ("Anthem"), along with their related subsidiaries and

affiliates, contracted with CMS to provide managed care to Medicare Advantage beneficiaries through various plans.

11.  BCBS and Anthem were "health care benefit programs," as defined by Title 18, United States Code, Section 24(b).

12.  These companies, including BCBS and Anthem, through their respective Medicare Advantage programs, often made payments directly to physicians, medical clinics, or other health care providers, rather than to the Medicare Advantage beneficiary that received the health care benefits, items, and services.  This occurred when the provider accepted assignment of the right to payment from the beneficiary.

13.  To obtain payment for services or treatment provided to a beneficiary enrolled in a Medicare Advantage plan, physicians, medical clinics, and other health care providers had to submit itemized claim forms to the beneficiary's Medicare Advantage plan.  The claim forms were typically submitted electronically via the internet.  The claim form required certain important information, including the information described above in paragraph 5 of this Indictment.

14.  When a provider submitted a claim form to a Medicare Advantage program, the provider party certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program.  The submitting party also certified that the services being billed were medically necessary and were in fact provided as billed.

15.  The private health insurance companies offering Medicare Advantage plans were paid a fixed rate per beneficiary per month by the Medicare program,

4

regardless of the actual number or type of services the beneficiary receives. These payments by Medicare to the insurance companies were known as "capitation" payments. Thus, every month, CMS paid the health insurance companies a pre-determined amount for each beneficiary who was enrolled in a Medicare Advantage plan, regardless of whether or not the beneficiary utilized the plan's services that month. CMS determined the per-patient capitation amount using actuarial tables, based on a variety of factors, including the beneficiary's age, sex, severity of illness, and county of residence. CMS adjusted the capitation rates annually, taking into account each patient's previous illness diagnoses and treatments. Beneficiaries with more illnesses or more serious conditions would rate a higher capitation payment than healthier beneficiaries.

### Defendants and Related Companies

16. Legend Medical & Rehabilitation Center Inc. ("Legend Medical"), was a Florida corporation, incorporated on or about November 29, 2007, with its principal place of business located at 1400 North Semoran Boulevard, in Orlando, Orange County, Florida. Legend Medical was purportedly a health care clinic that provided medical services and treatment to Medicare Part C beneficiaries.

17. Incare Medical & Rehab Center, Inc. ("Incare Medical"), was a Florida corporation, incorporated on or about July 23, 2008, with its principal place of business located at 3760 North John Young Parkway, in Orlando, Orange County, Florida. Incare Medical was purportedly a health care clinic that provided medical services and treatment to Medicare Part C beneficiaries.

5

18. Assisting Health Center, Inc. ("Assisting Health Center"), was a Florida corporation, incorporated on or about April 20, 2009, with its principal place of business located at 1417 North Semoran Boulevard, in Orlando, Orange County, Florida. Assisting Health Center was purportedly a health care clinic that provided medical services and treatment to Medicare Part C beneficiaries.

19. CKD Health Care Inc. ("CKD Health"), was a Florida corporation, incorporated on or about April 30, 2011, with its principal place of business located at 1417 North Semoran Boulevard, in Orlando, Orange County, Florida. CKD Health was purportedly a health care clinic that provided medical services and treatment to Medicare Part C beneficiaries.

20. Legend Medical, Incare Medical, Assisting Health Center and CKD Health are collectively referred to as "the Clinics."

21. Defendant **YOSBEL MARIMON** was a resident of Winter Park, Orange County, Florida. **YOSBEL MARIMON** was an owner and operator of the Clinics.

## COUNT ONE
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1. Paragraphs 1 through 21 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or around at least as early as July 2008, and continuing through in or around at least as late as October 2011, the exact dates being unknown to the Grand Jury, in Orlando, Orange County, in the Middle District of Florida, and elsewhere, the defendant,

6

## YOSBEL MARIMON,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit offenses against the United States of America, that is:

    a.    to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, BCBS and Anthem, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

    b.    to devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to a health care benefit program;

7

(b) concealing the submission of false and fraudulent claims to a health care benefit program; (c) concealing the receipt of the fraud proceeds; and (d) causing the diversion of the proceeds of the fraud for their personal use and benefit, and the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4. **YOSBEL MARIMON** and his co-conspirators paid cash kickbacks to Medicare beneficiaries in return for serving as patients at the Clinics, and access to their unique Medicare beneficiary information.

5. **YOSBEL MARIMON** and his co-conspirators used Medicare beneficiary information in order to submit false and fraudulent claims for prescription drugs purportedly provided to Medicare beneficiaries by the Clinics, including Sandostatin (generic name octreotide acetate) and Gammagard Liquid (generic name Intravenous Immune Globulin ("IVIG")).

6. **YOSBEL MARIMON** and his co-conspirators submitted and caused the submission of claims, via interstate wires, that falsely and fraudulently represented that various health care benefits, primarily prescription drugs, were medically necessary and provided by the Clinics to Medicare beneficiaries, when, in fact, they were not provided and not medically necessary.

7. The conspiracy caused the submission of approximately $11 million in Medicare claims for prescription drug-related reimbursement, such claims falsely and

fraudulently representing that prescription drugs were prescribed by a doctor and had been provided to Medicare beneficiaries, including beneficiaries who resided in Orange County, in the Middle District of Florida. As a result of such false and fraudulent prescription drug claims, Medicare, BCBS and Anthem made overpayments funded by the Medicare program to the Clinics in the approximate amount of $8.5 million.

8. **YOSBEL MARIMON** and his co-conspirators used the proceeds from the false and fraudulent Medicare claims for their own use and the use of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SEVEN
### Health Care Fraud
### (18 U.S.C. § 1347)

1. Paragraphs 1 through 21 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or around at least as early as July 2008, and continuing through in or around at least as late as October 2011, the exact dates being unknown to the Grand Jury, in Orlando, Orange County, in the Middle District of Florida, and elsewhere, the defendant,

**YOSBEL MARIMON,**

and those acting in concert with him, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, BCBS and Anthem, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, these health care benefit programs.

### Purpose of the Scheme and Artifice

3.  It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (b) concealing the submission of false and fraudulent claims to health care benefit programs; (c) concealing the receipt and transfer of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit, and the use and benefit of others, and to further the fraud.

### The Scheme and Artifice

4.  The allegations contained in paragraphs 4 through 8 of the Manner and Means section of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.  On or about the dates set forth below as to each count, in the Middle District of Florida and elsewhere, defendant **YOSBEL MARIMON**, and those acting in concert with him, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare,

BCBS and Anthem, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant submitted and caused the submission of false and fraudulent claims seeking the identified dollar amounts, representing that the Clinics listed below provided items and services to Medicare

| Count | Approx. Claim Date | Provider | Beneficiary | Claim Number | Services & Approx. Amount Claimed |
|---|---|---|---|---|---|
| 2 | 6/20/2011 | CKD Health | D.B. | Q100000250686306 | Injection, IVIG; $1,919 |
| 3 | 8/11/2011 | CKD Health | A.S. | Q100000261430992 | Injection, IVIG; $1,919 |
| 4 | 8/15/2011 | CKD Health | A.S. | Q100000261430980 | Injection, IVIG; $1,919 |
| 5 | 8/17/2011 | CKD Health | A.S. | Q100000261431420 | Injection, IVIG; $1,919 |
| 6 | 8/22/2011 | CKD Health | A.S. | Q100000261431419 | Injection, IVIG; $1,919 |
| 7 | 8/23/2011 | CKD Health | A.S. | Q100000261431418 | Injection, IVIG; $1,919 |

beneficiaries pursuant to physicians' orders and prescriptions:

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT EIGHT
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1. Paragraphs 1 through 21 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or around at least as early as July 2008, and continuing through in or around at least as late as October 2011, the exact dates being unknown to the Grand Jury, in Orlando, Orange County, in the Middle District of Florida, and elsewhere, the defendant,

### YOSBEL MARIMON,

did knowingly and willfully combine, conspire, and agree with each other and others known and unknown to the Grand Jury, to commit the following offense: to knowingly conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in such financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE
## (18 U.S.C. § 982)

1.   The allegations contained in Counts One through Eight of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982.

2.   Upon conviction of any violation of Title 18, United States Code, Sections 1347 or 1349, as charged in Counts One through Seven of this Indictment, defendant, **YOSBEL MARIMON**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7). Upon conviction of a conspiracy to violate Title 18, United States Code, Section 1956, as charged in Count Eight of this Indictment, defendant, **YOSBEL MARIMON**, shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3.   The property to be forfeited includes, but is not limited to, a forfeiture money judgment in the amount of at least $8,567,068.

4.   If any of the property described above, as a result of any act or omission of the defendants,

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1), including but not limited to:

a. the real property located at 201 SW 78th Place, Miami, FL 33144;

b. the real property located at 211 SW 78th Place, Miami, FL 33144;

c. the real property located at 333 W. Kings Way, Winter Park, FL 32789;

d. the real property located at 10462 SW 21st Street, Miami, FL 33165; and

e. the real property located at 937 Baltimore Drive, Orlando, FL 32810.

A TRUE BILL

_____
FOREPERSON

_____
KATHERINE HO
Assistant United States Attorney
Chief, Economic Crimes Section
MIDDLE DISTRICT OF FLORIDA

_____
GEJAA GOBENA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
TIMOTHY P. LOPER
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

FORM OBD-34
APR 1991

No. _____

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

YOSBEL MARIMON

**INDICTMENT**

Violations:
18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. §1956(h)

A true bill,

_____
Foreperson

Filed in open court this 15 day, of June, 2016.

_____
Clerk

Bail  $_____

GPO 863 525